NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

TENEKA DIXON,                  )
                                       )
          Appellant,         )
                                       )
v.                                 )          Case No. 2D16-3585
                                       )
ANITA EVETTE SERMON,    )
                                       )
         Appellee.          )
_____ )

Opinion filed November 17, 2017.

Appeal from the Circuit Court for
Pinellas County; James Pierce, Judge.

J. Andrew Crawford of J. Andrew
Crawford, P.A., St. Petersburg, for
Appellant.

Anita Evette Sermon, pro se.


ROTHSTEIN-YOUAKIM, Judge.

        Teneka Dixon appeals a fifty-year permanent injunction against stalking

Anita Sermon.  Because competent, substantial evidence does not support a finding

that Dixon's conduct was directed at Sermon, we reverse.

        In June 2016, Sermon petitioned for an injunction for protection against

stalking, alleging that Dixon had repeatedly sought out and threatened Sermon, putting

Sermon in fear for her life. After granting a temporary injunction pursuant to section 784.0485(5)(a), Florida Statutes (2015), the trial court held a hearing to determine whether a permanent injunction was warranted. At that hearing, Sermon testified as follows:

Dixon was having an affair with Sermon's husband. Sermon first caught Dixon with Mr. Sermon in Mr. Sermon's car and "from that point on [Dixon] would come to the house." On those occasions, Dixon would repeatedly ring the doorbell, pound on the door, or honk her car horn. Each time, either Mr. Sermon would go outside to talk with Dixon or no one would go outside to talk with her and she would eventually leave.

When Dixon came to the house on May 28, 2016, however, Sermon came outside, and Dixon expressed surprise to discover that Sermon lived at the house. She told Sermon: "[Y]ou're not supposed to be here. You live in Jacksonville." Sermon told Dixon to leave, and Dixon left, only to return the next morning and repeatedly ring the doorbell.

Mr. Sermon went outside to argue with Dixon while Sermon called her sister-in-law to complain that Dixon had returned. Sermon then went outside and demanded that Mr. Sermon stop disrespecting her and that Dixon leave. When Dixon refused, Sermon went back inside to call the police.

Sermon told the trial court: "[Dixon] don't know me, know me, but she have a tendency when she upset with him or they not together or they mad or whatever they may be going through, I got nothing to do with that. All I want her to do is not come to [my house]."

Dixon denied that she had repeatedly gone to Sermon's house and testified that she had only gone there once, on May 28, 2016, at Mr. Sermon's invitation. She also testified that Mr. Sermon had told her that Sermon did not live at the house but lived in Jacksonville. After hearing her testimony and questioning Mr. Sermon, the trial court granted a fifty-year permanent stalking injunction against Dixon.

Pursuant to section 784.0485, a person may obtain an injunction for protection against stalking. "A person who willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of stalking . . . ." § 784.048(2). Relevant to our analysis is that " '[h]arass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose."[1] § 784.048(1)(a).

Dixon argues that the evidence does not support the injunction because, among other reasons, her conduct was directed not at Sermon but at Mr. Sermon. We agree. Although ample evidence supports a finding that Dixon, contrary to her testimony, repeatedly came to Sermon's house, that same evidence only supports the finding that she did so to engage Mr. Sermon and that her interactions with Sermon were purely incidental. The evidence indicates that, initially, Dixon expressed surprise to learn that Sermon even lived at the house, because she had been led to believe that Sermon lived in Jacksonville. On the few occasions on which Dixon did interact with Sermon, Dixon came to the house apparently to confront Mr. Sermon, and Sermon either answered the door in Mr. Sermon's absence or injected herself into the ongoing

---

[1]The alternate forms of stalking under the statute, i.e., following or cyberstalking, are not at issue in this appeal.

argument between Dixon and Mr. Sermon. Indeed, Sermon herself acknowledged at the hearing, "[Dixon] don't know me, know me, but she have a tendency when she upset with him or they not together or they mad or whatever they may be going through, I got nothing to do with that." The record simply fails to establish that Dixon's conduct was directed at Sermon.[2]

Because the evidence was insufficient to establish a prima facie case of stalking, the trial court erred in granting Sermon's petition for injunction.[3] Accordingly, we reverse and remand for the court to vacate the injunction and dismiss the petition.

Reversed; remanded with instructions.

KHOUZAM and CRENSHAW, JJ., Concur.

---

[2]In her petition, Sermon alleged that Dixon had gone into Sermon's garage and had scratched her car with a key. Sermon alleged further, however, that she had not seen Dixon do it, and, even if Dixon had done it, Sermon did not allege that Dixon had known that it was Sermon's car. At the hearing, Sermon did not mention the incident at all.

[3]Having so concluded, we need not reach Dixon's alternate arguments that the trial court erred by failing to allow her to cross-examine Sermon and that a fifty-year injunction was excessive.

- 4 -